FAYE MARIE O'BRYAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11120–78.     Filed November 26, 1980.

*Lawrence Gerber* and *Rainer R. Weigel,* for the petitioner. *Judy Jacobs,* for the respondent.

OPINION

NIMS, *Judge:* Respondent has determined an income tax deficiency for the years 1971, 1972, 1973, and 1975 as follows:

| Year | Deficiency |
| --- | --- |
| 1971 | $13,476 |
| 1972 | 1,819 |

---

[8] See *Holbrook v. Commissioner,* T.C. Memo. 1975–294.

| 1973 | ....................................... | $2,481 |
| 1975 | ....................................... | 6,158 |

After concessions by petitioner, the sole issue remaining for the Court's determination is the proper method of calculating under section 642(h)(2)[1] an estate's "excess deductions" when the estate has made charitable contributions in its year of termination which are deductible under section 642(c).

## I

The facts in this case were fully stipulated and are so found. Faye Marie O'Bryan (the petitioner) resided in Chicago, Ill., at the time she filed her petition.

The estate in question is that of petitioner's husband, Leslie L. O'Bryan, who died on November 21, 1970. Mr. O'Bryan's will contained various specific bequests to petitioner, and it also left property to a marital trust sufficient for the estate to obtain the maximum marital deduction. The residue of the estate was left to a residuary trust, which required that all the trust income be distributed currently to the petitioner.

The final return for the estate, representing the period from August 1, 1973, to June 30, 1974, inclusive, reflected a gross income of $879,446.55 and the following deductions:

| Interest | $10,599.71 |
| Taxes | 1,176.79 |
| Charitable deduction | 776,500.00 |
| Miscellaneous expense | 593.46 |
| Executor's commissions | 65,000.00 |
| Attorney's fee | 85,000.00 |
| Accounting fees | 2,980.00 |
| | 941,849.96 |

The charitable deduction was claimed pursuant to section 642(c)(2)(B). Claimed deductions exceeded reported income by $62,403.41.

The residuary trust established pursuant to the terms of the will, the Leslie L. O'Bryan Trust, received gross income during 1974 of $72,739.59. Relying on section 642(h)(2), the trust claimed

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specifically indicated.

an excess deduction from the estate in the amount of $62,403.41. The parties stipulated that under the rules of subchapter J the excess deduction claimed by the trust had no effect on the trust's taxable income. The deduction did, however, reduce the income beneficiary's (i.e., the petitioner's) taxable income by the aforesaid $62,403.41.[2]

In the notice of deficiency the Commissioner determined that the estate's excess deductions under section 642(h)(2) had been calculated incorrectly and that petitioner's taxable income for 1974 was to be increased by $62,403.41.

## II

This is a case of first impression. At issue is the interpretation and construction of section 642(h)(2), which provides as follows:

If on the termination of an estate or trust, the estate or trust has—

\*   \*   \*   \*   \*   \*   \*

(2) for the last taxable year of the estate or trust deductions (*other than the deductions allowed under subsections* (*b*) *or* (*c*) ) in excess of gross income for such year,

then such carryover or such excess shall be allowed as a deduction, in accordance with regulations prescribed by the Secretary, or his delegate, to the beneficiaries succeeding to the property of the estate or trust.
[Emphasis added.]

The focal point of the dispute before us is the application of the parenthetical clause "(other than the deductions allowed under subsections (b) or (c))." Section 642(b) permits a $600 personal exemption deduction and section 642(c) permits a deduction for amounts paid or permanently set aside for a charitable purpose.

Like many simple rules, the rule contained in section 642(h)(2), when applied to a concrete set of facts, creates an enigma. We are told that no part of the charitable deduction may be included in "excess deductions," but we are not told how to determine whether, on facts such as ours, the excess of deductions over income actually includes any charitable deduction.

Respondent contends that section 642(h)(2) invokes a simple one-step procedure in which all deductions are totaled, except for the personal exemption and charitable contribution, and that

---

[2]Petitioner was the sole income beneficiary of the trust.

figure is given first priority in reducing gross income to determine whether there are any excess deductions.[3]

Petitioner reads the section 642(h)(2) parenthetical clause as excluding the section 642(c) deduction, not from total deductions calculated under section 642(h)(2), but only from the amount determined to be the excess. Arithmetically, this translates into a two-step calculation: the first step is to determine the amount by which total deductions exceeds gross income, and the second step is to determine what amount of this excess consists of deductions other than the section 642(b) and (c) deductions. In essence, says petitioner, the amount by which total estate deductions exceed gross income is an excess deduction under section 642(h)(2) to the extent that the estate has deductions other than a section 642(c) deduction.[4]

From the above it is apparent that, regardless of the arguments made to support the respective positions, each party is simply asking us to afford priority to a preferred type of deduction in reducing estate gross income. If, under petitioner's theory, gross income is first to be reduced (but not below zero) by the charitable deduction, the excess deductions allowable to the trust, and ultimately in fact to petitioner, must perforce consist of allowable deductions. Under respondent's theory, the reverse would be true.

There can be little argument that respondent's construction

---

[3]Respondent's computation is as follows:

| | | |
|---|---|---|
| a. | Gross income of estate .............................................. | $879,446.55 |
| | Less deductions: | |
| b. | Interest, taxes, fees, and | |
| | miscellaneous expenses ............................... ($165,349.96) | |
| c. | Sec. 642(c) charitable deductions ..................... 0 | |
| d. | Total deductions .................................................... | (165,349.96) |
| e. | Excess of deductions over gross income | |
| | (0 if line a exceeds line d) ........................................ | 0 |

[4]The following computation results from petitioner's approach:

| | | |
|---|---|---|
| a. | Gross income of estate .............................................. | $879,446.55 |
| | Less deductions: | |
| b. | Interest, taxes, fees, and | |
| | miscellaneous expenses ............................... ($165,349.96) | |
| c. | Sec. 642(c) deduction ................................. (776,500.00) | |
| d. | Total deductions ..................................................... | (941,849.96) |
| e. | Excess of deductions over income ................................ | (62,403.41) |
| f. | Amount attributable to deductions other than | |
| | sec. 642(c) deductions ............................................... | (165,349.96) |
| g. | Deduction allowable to beneficiary (lower of e or f) .......... | (62,403.41) |

follows more comfortably the literal dictates of the statute. Petitioner asks the Court to look beyond a literal construction of the statute and to read section 642(h) in the context of the entire statutory scheme of subchapter J. Petitioner argues that her interpretation preserves the integrity of the section 642(c) charitable deduction and also balances the goal of section 642(h) to ameliorate wastage of deductions with what she perceives as the purpose of the parenthetical in section 642(h)(2) to prevent any charitable deduction from being passed from an estate or trust to a noncharitable beneficiary.

Section 642(h) is only one part of a tightly woven and intricate statutory scheme. Before turning to the specifics of this case, we need to review the basic provisions and underlying principles of subchapter J of the Code, which deals with the taxation of estates, trusts, beneficiaries, and decedents, generally. We have couched this overview in terms of the tax treatment of estates; but the rules of subchapter J apply with equal force, with appropriate modifications, to trusts as well.

Subchapter J sets forth the rules for determining the proper amount of estate income subject to tax as well as the rules for determining whether the beneficiary or estate should bear the burden of this tax.[5] Simply stated, subchapter J is built on the "conduit principle" of taxation; i.e., estate income is taxed only once, either to the estate or to the beneficiaries, or partly to each. The estate is treated as a taxable entity and is taxed, in general, on income which it realizes but does not distribute to its beneficiaries. Income distributed to a beneficiary is not taxable to the estate but instead is taxable to the beneficiary. This result is accomplished by permitting the estate a deduction for the amount of the distribution.

The device that serves as the linchpin for this statutory scheme is the concept of distributable net income (D.N.I.). D.N.I., which is defined in section 643 and is essentially the

---

[5]Subch. J was the product of an extensive 1954 revision of the income tax of trusts and estates. See generally H. Holland, L. Kennedy, S. Surrey & W. Warren, "A Proposed Revision of the Federal Income Tax Treatment of Trusts and Estates—American Law Institute Draft," 53 Colum. L. Rev. 316, 318 (1953); S. Kamin, S. Surrey & W. Warren, "The Internal Revenue Code of 1954: Trusts, Estates and Beneficiaries," 54 Colum. L. Rev. 1237 (1954); A.L.I. Federal Income Tax Statute, February 1954 Draft, Vol. II, secs. X800-X885 (1954); Report of Committee on Taxation of Income of Estates and Trusts, Section of Taxation, A.B. A. (June 1, 1953).

estate's taxable income (with some modifications), serves generally as a ceiling on the combined tax liability of the estate and beneficiary. D.N.I. is allocated between the estate and beneficiaries in accord with the distribution rules of sections 661–663.

When distributions to beneficiaries exceed D.N.I., the tier structure of section 662 determines who among the beneficiaries are deemed to have received taxable distributions out of income and who have received nontaxable distributions out of corpus. D.N.I. is allocated under section 662(a)(1) first to beneficiaries who have a right to income that is "required to be distributed currently to such beneficiary," and the distribution to those beneficiaries is taxable to that extent. Sec. 1.662(a)–2(a), Income Tax Regs. All distributions within that tier are treated ratably should D.N.I. be less than total first-tier distributions. Any remaining D.N.I. is allocated pursuant to section 662(a)(2) among all other taxable beneficiaries, so called second-tier beneficiaries, and distributions to those beneficiaries are taxable to that extent. Sec. 1.662(a)–3(a), Income Tax Regs.

Section 661 complements section 662 by providing the estate a deduction up to the estate's D.N.I. for amounts distributed to its beneficiaries.

The rules of subchapter J become more complex when charitable beneficiaries are involved. In lieu of the charitable deduction allowed under section 170, section 642(c) in general allows an estate an unlimited charitable deduction for amounts of "gross income" which, pursuant to the governing instrument, are paid, permanently set aside, or to be used for charitable purposes.

On the estate side of the equation, the charitable contribution authorized by section 642(c) is simply one of numerous deductions that may be claimed in computing the estate's taxable income. To avoid duplicating deductions, section 663(a)(2) provides that distributions qualifying for the charitable deduction under section 642(c) are not included for purposes of calculating the estate's section 661 distribution deduction.

On the beneficiary side, however, the effect of the section 642(c) charitable distribution depends upon whether the beneficiary is a first- or second-tier beneficiary. Section 662(a) is

structured so that first-tier beneficiaries do not benefit from the charitable deduction.[6] Conceptually, section 662 accomplishes this by factoring charitable distributions into the tier system of priorities in such a way that the pool of income that can potentially be taxed to the beneficiaries (potentially taxable income)[7] is deemed to flow first to first-tier beneficiaries. It is only if the pool of potentially taxable income exceeds first-tier distributions that the distribution to charitable beneficiaries is deemed to come out of that pool. In effect, the section 642(c) charitable distribution is an "intermediate tier"[8] between tier-one and tier-two beneficiaries. We say intermediate tier because section 662(a)(2) is designed so that tier-two beneficiaries[9] benefit from the section 642(c) charitable distribution deduction: the pool of potentially taxable income for determining the amount of a distribution that is taxable to tier-two beneficiaries is reduced by the section 642(c) charitable distributions (as well as the tier-one distributions). Section 662 (a) and (b).

Finally, we reach section 642(h)(2), which allows estate beneficiaries to take a deduction on their individual return for certain excess deductions of the estate in the year of termination. Section 642(h) had no counterpart in the 1939 Internal Revenue Code. Prior to 1954 excess deductions of an estate could not be passed onto beneficiaries. The problem was particularly acute in the estate's final year when the windup expenses of estate administration are generally heaviest and the deductions for those expenses often are greater than income. Congress, as part of a general effort to prevent wastage of deductions,[10] ameliorated this problem through the enactment of section 642(h)(2).[11]

---

[6]We have drawn much of our analysis of the effect of the charitable deduction on first- and second-tier beneficiaries from the discussion on these points contained in M. Ferguson, J. Freeland & R. Stephens, Federal Income Taxation of Estates and Beneficiaries 426–432, 466–468 (2d ed. 1970). For an excellent recent article on termination problems in general, see S. Ross, "Income Tax Planning for Estate Termination," 51 Taxes 660 (Nov. 1973).

[7]The pool of income that can potentially be taxed to the beneficiaries is D.N.I. without the sec. 642(c) deduction.

[8]A. Michaelson, Income Taxation of Trusts and Estates 12 (P.L.I. 1963), is cited as the source of this concept in M. Ferguson, J. Freeland & R. Stephens, *supra* note 6, at 458.

[9]Tier two does not include the charitable distributee. See sec. 662(b).

[10]H. Rept. 1337, 83d Cong., 2d Sess. 201 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 343 (1954).

[11]The Senate Finance Committee report states:

"In the computation of such excess [deductions over gross income], the deduction allowed under subsection (b) for personal exemption and the deduction allowed under subsection (c) for

# III

Petitioner has drawn on two themes present in subchapter J in an attempt to show her construction of section 642(h)(2) best implements policy considerations underlying subchapter J. One is the familiar axiom that Congress seeks to encourage charitable contributions and foster charitable organizations and that this policy is manifested in section 642(c). The second is that unused deductions for expenses incurred in the year of termination should be passed on to beneficiaries.

While these themes are present in subchapter J, countervailing considerations surface in section 642(h)(2). Charitable deductions are allowed "without limitation" on the estate side only for purposes of calculating the *estate's* taxable income. On the beneficiary side, the section 662(a) tier system imposes a substantial limitation by barring first-tier beneficiaries from gaining any tax benefit from the presence of a section 642(c) charitable distribution deduction.[12] The structure of section 662 reflects a distinct lack of concern on the part of Congress for

amounts paid or permanently set aside for charitable purposes are not taken into account. [S. Rept. 1622, 83d Cong., 2d Sess. 343 (1954).]"

This legislative history of sec. 642(h)(2) does not precisely explain the policy reason for or the operation of the statute. We do know that much of the impetus for revising the income taxation of trusts and estates came from the American Law Institute and the American Bar Association, each of which exhaustively studied the problems at length over a number of years. One of the key areas of concern to both organizations was the problem of wasted deductions. The American Law Institute proposal (see note 5) relied simply on the concept of D.N.I. to ameliorate the problem of wasted deductions. Since termination expenses are deductible in determining D.N.I., and D.N.I. serves as a ceiling on the amount of income that must be recognized by a beneficiary, the effect of D.N.I. is to pass on to the beneficiaries deductions for these expenses up to the point of gross income.

The concept of D.N.I. did not solve the problem in cases where terminating expenses exceeded gross income for that period. The American Bar Association proposal (see note 5) met this problem in part through a provision (sec. 162.4) which is markedly similar to sec. 642(h)(2) except it made no reference to sec 642(b) and 642(c) charitable deductions. This provision was adopted as sec. 662(d) in H.R. 8300 (83d Cong., 2d Sess.) as reported out of the Ways and Means Committee and passed by the House of Representatives on Mar. 9, 1954. The Senate renumbered this section to sec. 642(h)(2) and added the references to secs. 642(b) and 642(c). Other than noting the change, the Senate Committee report did not dwell on the significance of the section 642(c) reference. S. Rept. 1622, 83d Cong., 2d Sess. 343 (1954).

[12]This lack of symmetry is the reason why petitioner's reliance on *United California Bank v. United States,* 439 U.S. 180 (1978), is misplaced. In that case, the Supreme Court read the "without limitation" language of sec. 642(c) to mean that the estate's alternative tax computation should not be different merely because the estate made a distribution to a charitable legatee as opposed to a noncharitable legatee. Petitioner finds that reasoning apposite here because the respondent's construction of sec. 642(h)(2) increases the tax liability of the noncharitable beneficiaries as a result of the unavailability of the charitable deduction as a sec. 642(h)(2) deduction. But clearly the policy considerations must be different when the

"wastage" of charitable deductions insofar as determining the tax liability of income beneficiaries.

In the instant case all the deductions, other than the section 642(b) personal exemption and the section 642(c) charitable deduction, have already been taken into account in determining the pool of income potentially taxable to beneficiaries. The only deduction that has been wasted here, i.e., that does not operate to reduce the income beneficiary's tax liability, is the section 642(c) deduction for charitable distributions. Given the lack of concern evinced by Congress in section 662 for wasted charitable deductions, we are not troubled by a reading of section 642(h)(2) which allows these deductions to go unused. Mathematically, this result is accomplished by excluding altogether the section 642(c) charitable deduction from the section 642(h)(2) computation, which is the construction of the statute called for by respondent.

Under the circumstances, we reject petitioner's argument that the policy considerations underlying subchapter J are best implemented by her reading of section 642(h)(2). In summary, we hold that to determine whether there are excess deductions available to beneficiaries under section 642(h)(2), deductions exclusive of the personal exemption under section 642(b) and the charitable deduction under section 642(c) are to be totaled and matched against the gross income of the terminating estate or trust. If the deductions so computed in fact exceed such gross income, then, and only then, will there be excess deductions as contemplated by section 642(h)(2).

To reflect concessions made by the parties on other issues,

*Decision will be entered for the respondent.*

---

tax liability of beneficiaries, rather than the estate, is at issue because sec. 662(a), itself, where the tier system is delineated, limits the availability of the charitable deduction to beneficiaries under certain circumstances.