CHARLES STEWART BAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baker v. Commissioner
Docket No. 39199-87
United States Tax Court
T.C. Memo 1990-107; 1990 Tax Ct. Memo LEXIS 109; 59 T.C.M. (CCH) 10; T.C.M. (RIA) 90107; March 1, 1990. *109 Petitioner was the sole beneficiary of a complex trust. The trust made a $ 50,000 distribution out of trust income to petitioner. In addition, for tax accounting purposes the trust acted as though it was a partnership and "allocated" a portion of its distributable share of partnership losses to petitioner. Petitioner claimed a deduction for the partnership losses "allocated" to him, although those same losses had been previously deducted from the trust's gross income. Pursuant to Maring v. Commissioner, T.C. Memo. 1988-469, respondent disallowed a portion of the "allocated" partnership losses claimed by petitioner. Held: Petitioner failed to prove that the disallowed loss was not included in the "allocated" partnership losses for which he claimed a deduction. Therefore, respondent's determination of deficiency is upheld. Held further: Because no express statutory authority exists entitling beneficiaries to claim a deduction for partnership losses already deducted from a trust's gross income, petitioner's claim of such a deduction would normally constitute a prohibited double deduction. However, respondent did not place petitioner's deduction of "allocated" *110 partnership losses in issue and the net effect of the manner in which petitioner treated the distribution and the "allocation" from the trust was that petitioner did not receive the benefit of a double deduction. Held further: Petitioner is liable for an addition to tax pursuant to sec. 6651(a)(1) for failure to timely file his return. W. Michael Stephens, for the petitioner. David Peck, for the respondent. WHITAKER
*117 MEMORANDUM OPINION WHITAKER, Judge: By statutory notice dated September 18, 1987, respondent determined a deficiency in petitioner's 1982 Federal income tax of $ 537.48 and an addition to tax for failure to timely file his return of $ 336.45. Initially, petitioner placed the timeliness of the statutory notice of deficiency in issue. Petitioner failed to reply to respondent's Request for Admissions that the statutory notice was issued prior to the expiration of the 3-year period of limitation. Accordingly, petitioner is deemed to have admitted that fact. Rule 90(c); [1]Morrison v. Commissioner, 81 T.C. 644, 647 (1983). The parties did not argue the issue further. Therefore, we find that respondent's statutory notice of deficiency was timely and that timeliness is not now in issue. *115 The remaining issues are: (1) whether petitioner is entitled to a deduction for certain partnership losses "allocated" to him by the trust of which he is the sole beneficiary; and (2) whether petitioner is liable for an addition to tax pursuant to section 6651(a)(1) for failure to timely file a return. The facts in this case are fully stipulated and are so found. The stipulation, supplemental stipulation, and attached exhibits are incorporated by this reference. Petitioner was a resident of Houston, Texas, when he filed his petition in this case. Petitioner is the sole beneficiary of the Charles Stewart Baker Trust (Trust). Basil S. Baker and Lois M. Baker, petitioner's parents, established the Trust as an irrevocable, complex trust. The successor trustee of the Trust is W. Michael Stephens (Trustee). Articles 2.3 and 2.11 of the governing trust instrument provide that the Trustee has the power to determine what is income and what is principal. There is no provision in the trust instrument granting authority to the Trustee to determine that distributions to petitioner may consist solely of one particular class of income. During the year in issue, the Trust was a limited *116 partner in several partnerships, including Allen Parkway Investors, Ltd. (Allen Parkway). For its fiscal year 1982, the Trust reported the following: Items of Income
Loss and Expense Deductions
Interest
$ 36,410.32
Partnership losses
$ 43,690.96
Dividends
1,031.60
Interest expense
52.24
Capital gains
80,043.05
Trustee fees
832.33
The partnership losses which the Trust deducted from income included the Trust's distributive share of partnership loss from Allen Parkway's investment in Sentinel Government Securities (Sentinel). The loss attributable to Sentinel amounted to $ 5,424.82. During 1982, the Trust made a discretionary distribution of $ 50,000 to petitioner, all of which the Trustee characterized as long-term capital gain. The Trustee determined that the remainder of the Trust's realized capital gains constituted trust principal. In addition, the Trust "allocated" $ 7,142.61 in purported partnership losses to petitioner in that year. Schedule K-1 of the Trust's fiscal 1982 return reflected the $ 50,000 distribution and the $ 7,142.61 "allocation" of losses to petitioner, but did not indicate from which sources the losses *117 "allocated" to petitioner stemmed. For tax accounting purposes, when it "allocated" partnership losses to petitioner, the Trust acted as though it was a pass-through entity, such as a partnership or Subchapter S corporation. On his 1982 return, petitioner included $ 50,000 as a distribution of trust income, all of which he characterized as long-term capital gain. In addition, petitioner claimed a deduction for $ 7,142.61 in partnership losses "allocated" to him by the Trust. As a result of these transactions, petitioner's 1982 gross income reflected a net amount of $ 42,857.39 from the Trust, i.e., $ 50,000 - $ 7,142.61. This amount exactly equaled the Trust's reported distributable net income (DNI). Petitioner obtained an extension of time for filing his 1982 return which lasted until October 1983. By reason of his failure to reply to respondent's Request for Admissions, petitioner is deemed to have admitted that he obtained no *118 extension beyond October 1983. Rule 90(c). However, petitioner failed to file his 1982 return until September 21, 1984. Subsequently, we held that Sentinel was created solely for the purpose of generating tax losses. See Maring v. Commissioner, T.C. Memo. 1988-469. *118 Respondent treated the losses "allocated" to petitioner as including the Trust's entire Sentinel loss, and disallowed $ 5,424.82 of the $ 7,142.61 in "allocated" partnership losses for which petitioner claimed a deduction in 1982. In the statutory notice of deficiency, respondent stated that the excess, $ 1,717.79, was petitioner's proper "distributive share of loss" from the Trust. Respondent did not disallow petitioner's deduction of that amount of "allocated" partnership losses. The parties agree that a deduction for losses attributable to the Trust's distributable share of Allen Parkway's investment in Sentinel ($ 5,424.82) is not allowable. However, the parties disagree on whether the Sentinel loss was included in the "allocated" losses for which petitioner claimed a deduction. Respondent argues that petitioner is liable for the entire deficiency unless he can prove that the Sentinel loss was not included in the "allocated" partnership losses for which he claimed a deduction. In the alternative, respondent urges that the Trust must adjust its net income and DNI to reflect the disallowed Sentinel loss. Thus, the Trust's allowable partnership losses must decrease by $ 5,424.82, *119 and net income and DNI must increase by the same amount. [2] Respondent further maintains that petitioner may claim a deduction for only his proper "distributive share" of the Trust's losses. This proper "distributive share" would purportedly decrease, by reason of the adjustment to the Trust's income and DNI, by the same amount to $ 1,717.79 ($ 7,142.61 - $ 5,424.82). We agree that the Trust should adjust its income and DNI to reflect the disallowed Sentinel loss. The Trust, however, is not a party to the present action. Further, respondent cites no authority for his position that a beneficiary may deduct a "distributive share" of losses sustained by a trust. Petitioner maintains that the provisions of Subchapter J authorize apportioning the disallowance between the Trust and petitioner. Thus, petitioner contends that he is liable for only a portion of the deficiency resulting from disallowance of the Sentinel loss. According to petitioner, the Trust should *120 be liable for the remainder of the deficiency. Petitioner's argument is without merit. The authority which petitioner cites in his trial memorandum and brief does not support his position. We find no other authority in Subchapter J for apportioning the disallowance and resulting deficiency between petitioner and the Trust. Further, we agree that petitioner is liable for the entire deficiency. Respondent's determination of deficiency is presumed correct. Rule 142(a). Deductions are a matter of legislative grace and petitioner bears the burden of proving entitlement to any claimed deductions. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Petitioner offered no evidence that the disallowed Sentinel loss was not one of the partnership losses "allocated" to him by the Trust. Moreover, petitioner offered no evidence that the partnership losses for which he claimed a deduction did not include the disallowed Sentinel loss. Therefore, we find that petitioner deducted the disallowed Sentinel loss in 1982. Wichita Terminal Elevator Co., 6 T.C. 1158 (1946), *121 affd. 162 F.2d 513 (10th Cir. 1947). On the basis of that finding, and because we find no authority for apportioning the deficiency between petitioner and the Trust, we hold that petitioner failed to satisfy his burden of proof and is liable for the deficiency as determined by respondent. However, we cannot decide this case solely on burden of proof without risking that the parties would infer an implied authorization for beneficiaries to claim deductions for losses which have been "allocated" or "distributed" to them by ongoing trusts after deduction from trust gross income. This premise underlies petitioner's arguments. Respondent acceded to the theory by characterizing the "allocated" partnership losses which exceeded the amount of the disallowed Sentinel loss as petitioner's deductible "distributive share" of the Trust's partnership losses. Both parties are mistaken in their assumptions. Our opinion in this case in no way reflects approval of beneficiaries deducting losses "allocated," "distributed," or otherwise passed through from a trust, after the trust deducted those same losses from gross income, without express statutory authority. Indeed, there is no *122 reference in the statutes and regulations governing taxation of trusts and beneficiaries to "allocations" or "distributive shares." A discussion of the proper application of the statutory provisions governing the tax consequences of transactions between trusts and their beneficiaries to the facts in this case is therefore appropriate. The statutory provisions of Subchapter J govern the manner in which petitioner should have *119 determined his 1982 trust income. Subchapter J also sets forth the manner in which the Trust should have computed its income and tax liability. A trust is a separate taxable entity which generally computes income in the same manner as individuals. Sec. 641(b). Therefore, a trust is not a pass-through entity which may "allocate" a "distributive share," or otherwise pass losses through to beneficiaries in the manner of a partnership or Subchapter S corporation. The general rule of Subchapter J is that trust income is taxed only once, either to the trust or to the beneficiaries, or partly to both. O'Bryan v. Commissioner, 75 T.C. 304, 308 (1980) (discussing *123 taxation of an estate and its beneficiary, governed by the same provisions of Subchapter J as apply to the taxation of trusts and their beneficiaries); J. Mertens, Law of Federal Income Taxation, sec. 36.04 (1989). The concept of DNI is the key to determining who bears the tax liability for trust income. DNI is essentially a trust's gross income, excluding capital gains allocated to principal, minus allowable deductions and losses. Sec. 643(a). As opposed to a pass-through entity such as a partnership, trust income is taxed at the trust level to the extent that the income is not distributed and taxed to trust beneficiaries. Secs. 641, 643, and 661-663. Trusts are either simple or complex. In general, simple trusts must distribute all income currently while complex trusts may distribute as well as accumulate income or pay or set aside income for charitable purposes. Secs. 651 and 661. Beneficiaries of complex trusts must include trust distributions in gross income to the extent of DNI. Sec. *124 662(a). The regulatory scheme of section 662(a) generally treats distributions in excess of DNI as nontaxable distributions of trust principal. Sec. 1.662(a)-1 through (a)-4, Income Tax Regs. Thus, trusts make distributions out of trust income which are taxable to the beneficiaries or distributions out of principal which are nontaxable to beneficiaries. O'Bryan v. Commissioner, supra at 309. Trusts generally compute their deductions in the same manner as individuals, except that trusts are allowed a special deduction for income distributions to beneficiaries. Fabens v. Commissioner, 519 F.2d 1310, 1313 (1975), affg. in part and revg. in part 62 T.C. 775 (1974). Complex trusts may take a deduction for distributions to beneficiaries, whether the distributions are mandatory or discretionary under the controlling trust instrument, in an amount not exceeding DNI. Sec. 661(a).[3]
*125 Taxation of complex trusts and their beneficiaries is designed so that there is no duplication of taxation, no wasting of deductions on termination of trusts, and no duplication of deductions by trusts and their beneficiaries. Secs. 661, 662 and 642(h); O'Bryan v. Commissioner, supra at 308-311. In general, trusts are entitled to a deduction for losses sustained during the taxable year under the same conditions applicable to individual taxpayers. J. Rabkin & M. Johnson, Federal Income, Gift and Estate Taxation, par. 54.02(13) (1989). Therefore, as is the case in determining entitlement to any deduction, absent express statutory authority to the contrary, only the trust sustaining a loss is entitled to take a loss deduction. See, e.g., New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Calvin v. United States, 354 F.2d 202, 204 (10th Cir. 1965); Moore v. Commissioner, 70 T.C. 1024, 1032 (1978). Thus, the first step in ascertaining the proper tax treatment of the transactions between petitioner and the Trust *126 is to determine if express statutory authority exists entitling petitioner to claim a deduction for partnership losses sustained by the Trust. We find no such authority. Except for depreciation and depletion, [4] income beneficiaries may claim deductions for losses sustained by the corresponding trust only upon termination of the trust. Sec. 642(h)(1) and (2); J. Rabkin & M. Johnson, Federal Income, Gift and Estate Taxation, supra at par. 54.03(12). Further, such deductions are limited to deductions for the trust's unused net operating loss or capital loss carryovers and for the excess of trust deductions over gross income in the year of termination. Sec. 642(h)(1) and (2). However, the provisions of section 642(h) are not applicable to the facts of this case. Beneficiaries indirectly obtain the benefits of other losses and expenses, for which only the trust may take a deduction, *127 when a trust deducts losses or expenses in calculating DNI. Had Congress intended to allow a beneficiary of an ongoing trust to deduct partnership losses sustained by the trust, it would specifically have *120 provided for such deductions as it did for the deductions allowed beneficiaries pursuant to section 642(h). The Trust deducted the partnership losses at issue from gross income prior to attempting to "allocate" those same losses to petitioner. Further, the Trust utilized those losses in computing DNI. Accordingly, petitioner obtained all allowable benefit when the Trust deducted the losses in calculating net income and DNI. Because trusts are not pass-through entities which may allocate distributive shares of loss, the Trust improperly "allocated," or passed through, $ 7,142.61 in partnership losses to petitioner. Normally, to allow a claim such as petitioner's would be to allow a double deduction. However, the statutory notice of deficiency did not disallow petitioner's claim of those partnership losses attributable to the Trust's investment in Sentinel on the basis that such deductions were double deductions. Further, respondent did not request to amend his answer to assert *128 such grounds for disallowing those partnership losses claimed by petitioner which exceeded the disallowed Sentinel losses, i.e., the $ 1,717.79 excess, until the filing of his post-trial brief. [5] Thus, we will not at this time increase the amount of petitioner's deficiency because of the improperly claimed partnership losses which exceeded the amount of the disallowed Sentinel loss. Sec. 6214(a); Rule 41(a). We next consider the portion of the $ 50,000 distribution which petitioner should have included in income. In order to determine the amount petitioner must include, we must first calculate the Trust's DNI, as adjusted to reflect the disallowed Sentinel loss. When respondent disallowed the Sentinel partnership loss of $ 5,424.82, the Trust's distributive share of partnership losses decreased from $ 43,690.96 to $ 38,266.14. The Trust's taxable income thus increased by $ 5,424.82 to $ 78,325.36, and DNI increased by the same amount to $ 48,282.21. [6] Because the Trust is not a party before us, we note once again that these figures merely reflect the proper adjustments *129 which should have occurred upon disallowance of the Sentinel loss. The Trust made a discretionary distribution to petitioner of $ 50,000, all of which the Trustee characterized as long-term capital gain. Petitioner, as sole beneficiary of the Trust, should have included in income all distributions required to be made or properly paid or credited to him by the Trust up to an amount equal to DNI, as adjusted to reflect the disallowed Sentinel loss. Sec. 662(a); *130 Scheft v. Commissioner, 59 T.C. 428, 429-430 (1972). The Trust's $ 50,000 discretionary distribution was an amount properly paid to petitioner within the meaning of section 662(a). Sec. 1.662(a)-3(b), Income Tax Regs.
The amount of the distribution to petitioner which exceeds DNI, as adjusted to reflect the disallowed loss, is considered a nontaxable distribution of trust principal. Sec. 1.662(a)-3, Income Tax Regs.; O'Bryan v. Commissioner, supra at 309. Therefore, petitioner was required to include only $ 48,282.21, an amount equal to the Trust's DNI as adjusted for the disallowed loss, in his income for 1982.[7] The $ 1,717.79 excess ($ 50,000 - $ 48,282.21) should have been treated as a nontaxable distribution of Trust principal. Petitioner, however, did include the $ 1,717.79 excess as long-term capital gain. Correspondingly, the Trust's deduction for income distributions to petitioner may not exceed DNI, as adjusted for the disallowed loss. Section 661(a). *131 Even after disallowance of the Sentinel loss, and assuming proper adjustment to the Trust's DNI, the peculiar "allocation" and corresponding deduction of partnership losses resulted in petitioner including a net amount from the Trust equal to DNI. Thus, petitioner, in effect, did not include more than he was required to include by section 661(a). Nor did petitioner receive the prohibited benefit of a double deduction. However, we emphasize that in terms of both the net amount included in income and the existence of a prohibited double deduction, petitioner reached the desired end using improper means. It is not a foregone conclusion that this happy coincidence would ever again occur. We do not imply that petitioner received no benefit by virtue of the manner in which he computed his income. However, under the circumstances of this case and as discussed below, such benefit is limited to that occurring because of characterization of the entire $ 50,000 distribution as long-term capital gain. *121 Finally, we consider the character of classes of income composing the Trust's distribution to petitioner, and the amount of each class of income so distributed. Schedule K-1 of the Trust's *132 return characterized the entire amount distributed to petitioner, and petitioner included the entire distribution, as long-term capital gain. However, the Trust also had interest and dividend income which entered into the computation of DNI. Distributions have the same character in the hands of beneficiaries as in the hands of the distributing trust. Sec. 662(b). Furthermore, unless otherwise provided, distributions are deemed to consist of the same proportion of each class of income entering into the computation of DNI as the total of each class bears to total DNI. Sec. 1.662(b)-1, Income Tax Regs. When trusts have receipts comprised of more than one class of income, distributions consisting only of one class of income are not allowed unless specifically provided for under the terms of the governing instrument, or unless local law requires such an allocation. Sec. 1.662(b)-1, Income Tax Regs.
The Trust was created in Texas. Texas law, as the local law governing administration of the Trust, does not require the Trustee to make *133 distributions consisting only of one class of income (in this case, capital gains). Under the terms of the Trust's governing instrument the Trustee does not have the specific authority to distribute only one class of income to petitioner. Further, characterization of the entire $ 50,000 distribution as capital gains has no economic consequence other than tax-related ones. Van Buren v. Commissioner, 89 T.C. 1101, 1109 (1987). Therefore, the distribution to petitioner is deemed to have consisted of long-term capital gains, interest, and dividend income, rather than to have been composed entirely of long-term capital gains. Sec. 1.662(b)-1, Income Tax Regs.
The amount of long-term capital gains, interest, and dividend income comprising the distribution to petitioner is calculated in accordance with the regulations under section 662(b). However, simply determining the ratio of the total of each class of income included in DNI to total DNI, as described in section 1.662(b)-1, Income Tax Regs., is not adequate to determine the amount of each class of income distributed. Deductions of the Trust which enter *134 into the computation of DNI must be allocated between income classes comprising the distribution, as petitioner reaps the benefits of such deductions only indirectly through DNI computation. We have not previously discussed the allocation of deductions when determining the amount of each class of income included in distributions from a complex trust. The regulations under section 662(b) do not specifically address the allocation of such deductions. However, section 1.662(b)-1, Income Tax Regs., states that the principles set forth in section 1.652(b)-1, Income Tax Regs., determining the character of distributions from simple trusts, shall apply in determining the amount of each class of income included in a distribution from a complex trust. Section 1.652(b)-3, Income Tax Regs., describes the manner of allocating deductions for purposes of determining the amount of each class of income includable under section 1.652(b)-1, Income Tax Regs. Further, examples illustrating *135 the provisions of section 662, contained in section 1.662(c)-4, Income Tax Regs., comport with the treatment of deductions detailed in section 1.652(b)-3, Income Tax Regs. Therefore, we turn to section 1.652(b)-3, Income Tax Regs., for guidance. Section 1.652(b)-3, Income Tax Regs., states that items of deduction of trusts which enter into the computation of DNI are allocated among the various items of income. All deductible items directly attributable to one class of income (except dividends excludable in 1982 under section 116) are allocated to that class. Sec. 1.652(b)-3(a), Income Tax Regs. The deductions not directly attributable to a specific class of income comprising DNI may be allocated to any item of income, including capital gains, with certain exceptions where a trust has nontaxable income. Sec. 1.652(b)-3(b), Income Tax Regs., supra. We considered the application of section 1.652(b)-3, Income Tax Regs. *136 , in Van Buren v. Commissioner, supra. We stated in that case that: The purpose of the 1954 Code, expressed in section 652(b), was to give to the income beneficiary the benefit of all deductions attributable to taxable income which was distributed to her, excluding those deductions attributable to tax-exempt income. Tucker v. Commissioner, 322 F.2d 86 (2d Cir. 1963), affg. 38 T.C. 955 (1962)). Respondent's regulations carry out this intention, providing that after allocating a proportionate part of the expenses to tax-exempt income, and after excluding capital gains [included in principal] (there were none here) from the allocation computation, the remaining deductions not directly attributable to a specific class of income "may be allocated to the [taxable income] in such proportions as the trustee may elect." Sec. 1.652(b)-3, Income Tax Regs. We think it clear, both from the way the income was reported, as well as from petitioner's computation herein, that it was the trustee's intention that petitioner should have the benefit of all available deductions. * * * *122 Van Buren v. Commissioner, supra at 1110-1111. *137 We find our rule in Van Buren equally applicable to the present case. Beneficiaries of complex trusts, as well as simple trusts, should be given all allowable benefit of deductions when determining the amount of each class of income comprising a distribution. This conclusion is supported by the fact that the examples set forth in section 1.662(c)-4, Income Tax Regs., comport with both section 1.652(b)-3, Income Tax Regs., and our rule in Van Buren. As was the case in Van Buren, we presume that the Trustee intended that petitioner should have all possible indirect benefits of the Trust's deductions. Thus, in determining the character of the net amount of each class of income comprising that portion of the distribution taxable to petitioner ($ 48,282.21), losses used in computing DNI may be allocated first to ordinary income and then to capital gain income used in the DNI calculation. We emphasize that deductible losses are allocated to the various items of trust income solely to determine character of the net amounts *138 of each class of income comprising the distribution. Such allocation does not have the effect of offsetting ordinary loss against long-term capital gain or vice versa. Therefore, after adjusting Trust income for the disallowed Sentinel loss, petitioner should have included $ 100 as ordinary income from dividends and $ 48,182.21 as long-term capital gain. [8] As previously noted, the remainder of the $ 50,000 distribution should have been treated as a nontaxable distribution out of principal. *139 To the extent that petitioner included $ 100 as long-term capital gains rather than as ordinary income, he received a benefit in the form of the lower rate of taxation of capital gain income in effect in 1982. Sec. 1202(a). Since respondent did not place petitioner's compliance with section 662(b) in issue, the difference in tax due because of the improper characterization is a windfall to petitioner. The last issue for consideration is whether petitioner is liable for an addition to tax for late filing. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer proves that failure to file was for reasonable cause and not due to willful neglect. By failing to reply to respondent's Request for Admissions petitioner is deemed to have admitted that he obtained no extension for filing his 1982 return after October 1983. Rule 90(c); Morrison v. Commissioner, 81 T.C. 644, 647 (1983). The record shows that petitioner did not file until September 21, 1984. Petitioner introduced no evidence that his failure to timely file was due *140 to a reasonable cause and lacked willful neglect. Therefore, petitioner proved neither lack of willful neglect nor reasonable cause for failing to file his return until 11 months after it was due. Thus, petitioner is liable for the addition to tax pursuant to section 6651(a)(1). For the foregoing reasons, Decision will be entered for the respondent. Footnotes
1. Unless otherwise noted, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
2. In his supplemental trial memorandum, which we treat as a post-trial brief, petitioner does not contest that the Trust's net income and DNI should have been adjusted to reflect disallowance of the Sentinel loss.↩
3. However, trusts may not take deductions for those portions of income distributions which correspond to items which the trust does not include in gross income. Sec. 661(c)↩. For taxable year 1982, certain dividends were excluded from trust gross income. Sec. 116. Section 116 was repealed by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 612(a), 100 Stat. 2250. However, this repeal does not affect the tax year in issue. Therefore, in the year in issue a trust could take no income distribution deduction for dividends excluded pursuant to section 116, even though such dividends are included in the computation of DNI. Sec. 1.661(c)-1 and (c)-2, Income Tax Regs.
4. Section 611(b)(3) provides that depletion deductions must be apportioned between income beneficiaries and trustees. Section 167(h) mandates the same apportionment of depreciation deductions.↩
5. As we did with petitioner, we treat respondent's supplemental trial memorandum as a post-trial brief.↩
6. Arts. 2.3 and 2.11 of the governing trust instrument gave the Trustee authority to allocate capital gain receipts to either income or principal. The Texas Property Code provides that trust receipts should be allocated to income or principal according to the terms of the trust instrument. Tex. Prop. Code Ann. sec. 113.101(a) (Vernon 1989). Therefore, in distributing capital gains to petitioner, the Trustee treated such gains as income rather than principal. Sec. 1.643(a)-3, Income Tax Regs.Distributed income in the nature of capital gains is included in the computation of DNI. Sec. 643(a)(3)↩.
7. Under the facts of this case, we do not decide the amount includable in gross income had there been multiple beneficiaries of the Trust or had the Trust been required to currently distribute income to petitioner. In either case, the two-tier treatment of income recognition to beneficiaries set forth in the regulatory scheme of section 662↩ would come into play.
8. The amount of each class of income distributable to petitioner is computed by allocating deductions included in computing DNI as follows: Excluded
Interest
Dividends
Dividends
Capital Gain
Total
Items of Income
included in DNI
Computation:
$ 36,401.32
$ 931.60
$ 100.00
$ 50,000.00
$ 87,432.92
Less DNI deductions:
Interest expense
52.24
52.24
Trustee expense
832.33
832.33
Partnership loss
35,516.75
931.60
1,817.79
$ 38,266.14
Amount distributable
to petitioner
- 0 -  - 0 -
$ 100.00
$ 48,182.21
$ 48,282.21
The proper amount of each class of income comprising the distribution is calculated as follows: Interest
$ 0  / $ 48,282.21 X $ 48,282.21 = $ 0
Dividend
$ 100.00 / $ 48,282.21 X $ 48,282.21 = $ 100 Capital gain
$ 48,182.21 / $ 48,282.21 X $ 48,282.21 = $ 48,282.21
See examples, sec. 1.662(c)-4(e) and (g), Income Tax Regs.↩; S. Rept. 1622, 83d Cong., 2d Sess., at 351-353 (1954).